**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| POWERHOUSE HILLWOOD HOLDING LLC,<br>*Plaintiff*,<br>v.<br>COMMONWEALTH EDISON COMPANY,<br>*Defendant*. | Case No. 1:26-cv-8860<br>Judge Sara L. Ellis<br>Magistrate Judge Albert Berry III |

# **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Hillwood, in its fourth request for interim relief since July, seeks the most extraordinary equitable relief: a mandatory preliminary injunction compelling ComEd to proceed as if Hillwood's terminated Retail Application were in effect, to return Hillwood to "cluster 1," to "comply[] with [particular] schedules," and to build the grid to accommodate Hillwood's massive project. Dkt. 105 at 1-2. Hillwood cannot carry the heavy burden required to obtain such relief.

*First*, Hillwood's Motion suffers from a fatal mismatch between the relief sought and the substantive claim it asserts. Hillwood says it is likely to succeed on Count I, which seeks a declaration on the TSA's letter-of-credit provision. Mem. 13-14. But even if Hillwood won that issue, it would only affect the timing of TSA security. It would not revive the retail application that ComEd terminated for independent reasons or entitle Hillwood to a cluster position or an energization date. Those retail issues, moreover, are within the ICC's exclusive jurisdiction, as the Court recognized: "[c]ertainly anything involving the RSA has to go before the ICC." 8/28 Tr. 5:12-13. And although Hillwood now dates this dispute to May, it *still* has not sought ICC relief.

*Second*, Hillwood has not shown irreparable harm, much less harm an injunction would avert. Hillwood says the "Project's viability depends on a defined schedule," SAC ¶ 51, and delay would "essentially kill[]" it, Mem. at 14. But if so, Hillwood long had an alternative: Post the disputed amounts and seek a refund. 8/28 Tr. 36:24-37:9. Hillwood declined. Now, thanks to Hillwood's choices, it is even more unclear how it could build on its desired timeline. After Hillwood rejected ComEd's offers to preserve a long-lead contract and withdrew its TRO motion, ComEd cancelled that contract. Hillwood has not shown it can build on its schedule without that contract. Indeed, it has not shown it has the billions needed to build its project on *any* schedule.

*Third*, the balance of equities weighs strongly against Hillwood. An injunction would require ComEd to expend untold millions of dollars to plan and build the grid around a massive

load whose developer has never shown it can complete the project, and would require ComEd to restart and redo critical studies that proceeded after Hillwood withdrew its TRO. Projects in those studies, whose sponsors posted full letters of credit and paid deposits, would face months or years of added delay. Harms would multiply if an injunction issued and Hillwood's project later failed—which would yield yet more delays and leave families to pay for the huge costs Hillwood caused.

This Motion is not about whether Hillwood can build a data center. It can always submit a new application. The Motion is about a demand for a schedule. But neither ComEd nor the TSA guaranteed a schedule, and Hillwood has not tried to show a likelihood of success on any such claim. For good reason. The TSA provided an ***estimated*** schedule if all pre-conditions were met, and always subject to the retail regulatory regime governing such issues. That estimate—now in the rear-view mirror due to Hillwood's delay-inducing choices—cannot sustain the relief requested or the massive burdens Hillwood would impose on ComEd, its customers, and others. This "remedy would alter the status quo, rather than preserve it." *Santa Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*, 2025 WL 96482, at *8 (N.D. Ill. Jan. 14, 2025) (Ellis, J.). And Hillwood's request is even more "disfavored" because it would "give [Hillwood] substantially all the relief it seeks." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 827 (7th Cir. 1998). This dispute is about what *up front* security is required to protect customers. If the grid must be planned to accommodate Hillwood for the next (say) year, it will have gotten all it seeks (indeed, more than its complaint even requests). Hillwood would then get to decide whether to show up.

## BACKGROUND

Hillwood seeks retail electric service for a 1,800-megawatt data center. Leichtman Decl. ¶ 21. This service is governed by ComEd's ICC-approved tariff, under which ComEd provides service "only if all applicable requirements . . . are met and maintained." Leichtman Decl. Ex. A

(3rd Revised Sheet No. 149). Customers must also execute a TSA—a FERC-jurisdictional agreement requiring a customer to back its transmission-revenue commitments with a letter of credit. Leichtman Decl. ¶ 13, Ex. A (1st Revised Sheet No. 150.1); TSA ¶ 9.

Hillwood declined to provide security under the TSA or meet its duties under the retail tariff. The TSA required a letter of credit by April 14. TSA ¶ 9(A)(a) & Ex. C; Leichtman Decl. ¶ 28. Hillwood posted $1. *Id.* ¶ 29. ComEd served a notice of default on May 4, *id.* ¶ 31, but confirmed on May 15 that it was "prepared to continue Phase 1" engineering and refrain from cancelling a long-lead contract, "provided that Hillwood increases its current deposit to cover ComEd's anticipated costs through the end of the dispute resolution process." Alvarez Decl. Ex. B at 1. ComEd renewed the request on May 28 and July 1. Alvarez Decl. ¶¶ 13-14. Hillwood provided no deposit and instead sued ComEd. Alvarez Decl. ¶ 15.

On July 24, ComEd terminated the Retail Application for failure to provide deposits and land rights, Alvarez Decl. ¶ 16, and filed to cancel the TSA at FERC, Dkt. 14-4. Even so, ComEd on August 25 offered to keep the long-lead contract in place for another month if Hillwood posted a letter of credit for the $26.4 million to secure against the cancellation fee. Alvarez Decl. ¶ 17. Hillwood declined and moved for a TRO, seeking much of the same relief as now. Dkt. 67. Thereafter, ComEd made another written offer. Hillwood rejected ComEd's offer, withdrew its TRO, and said it viewed injunctive relief as "inadequate" and damages as "the most appropriate remedy." Dkt. 94 at 1. ComEd then cancelled the long-lead contract. Alvarez Decl. ¶ 17.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). Hillwood "bears a significant burden." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). It must show a likelihood of success on the merits, that legal remedies

are inadequate, and irreparable harm. *GrubHub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843-44 (7th Cir. 2023) (citation omitted). Only then does the court "weigh[] the harm of denying an injunction . . . against the harm of granting" one. *Id.* at 844. Hillwood seeks a mandatory injunction "requiring an affirmative act." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). "[M]andatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds." *Id.*

**ARGUMENT**

**I. Hillwood Has Not Shown A Likelihood Of Success On Any Relevant Claim.**

Hillwood cannot make the "clear showing that it is 'likely to succeed'" that the "traditional standard" requires. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 340 (2024).[1]

**A. Hillwood's Asserted Claim And Requested Relief Are Fatally Mismatched.**

A preliminary injunction is "appropriate to grant intermediate relief of the same character as that which may be granted finally," *De Beers Consol. Mines v. United States,* 325 U.S. 212, 220 (1945). Hence, if a plaintiff shows it is likely to succeed on a claim at final judgment, it may obtain interim relief that would be available on that claim. Here, the Motion suffers from a fatal mismatch.

*First*, Hillwood has not established a likelihood of success on any claim supporting the relief it seeks. Hillwood says it is likely to succeed on the TSA letter-of-credit dispute. Mem. 13-14. But that would not entitle it to reinstatement of its retail application, inclusion in a particular cluster, energization on a particular schedule, or any of its Motion's other relief.

Courts have rejected injunctions suffering such mismatch. In *De Beers*, the government brought antitrust claims and sought a preliminary sequestration order. 325 U.S. at 220. The Supreme Court rejected that request because even if the antitrust claims won, the relief "deal[t]

[1] *See also GCM Partners, LLC v. Hipaaline Ltd.,* 2020 WL 6867207, at *7 (N.D. Ill. Nov. 23, 2020) ("mere possibility" insufficient); *Santa Maria*, 2025 WL 96482, at *5 ("strong showing" needed).

with property which in no circumstances can be dealt with in any final injunction." *Id.* In *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019 (7th Cir. 2017), the Seventh Circuit assumed the plaintiff was likely to succeed on antitrust claims but reversed a preliminary injunction that—out of "concern for preserving [the plaintiff] as a functioning company"—went "well beyond the scope of the alleged violation." *Id.* at 1021, 1024. Many cases are in accord.[2] Indeed, the SAC does not even *seek* permanent injunctive relief on any count. A preliminary injunction "must be an order that gives some or all of the substantive relief sought in the complaint." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). Hillwood cites cases saying plaintiffs need only show a likelihood of success on "one claim." Mem. 2. But none involved a situation where success would not support the relief sought.

*Second*, the relief Hillwood seeks implicates the ICC's exclusive jurisdiction. As Hillwood concedes, ComEd's duties to provide service and build infrastructure are "dictated by ComEd's tariffs on file with the [ICC]." SAC ¶ 10. The "Tariff . . . addresses in detail the obligations relating to constructing, invoicing, substantiating costs relating to, and payment for the physical infrastructure that ComEd must build." *Id.*; *see* 3rd Revised Sheet No. 149; 1st Revised Sheet No. 149.3. The Motion's requested relief relates to those retail issues. In addition, any duties the TSA might impose on ComEd exist only "as long as all other preconditions under . . . any applicable tariff are met," TSA ¶ 4(A), and ComEd need only proceed "consistent with . . . its retail service

[2] *E.g.*, *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (even if plaintiff was likely to succeed on antitrust claims, it could not obtain a preliminary injunction providing relief that would follow only if it succeeded on a contract claim); *Jones v. Willis*, 2024 WL 4165379, at *2-3 (S.D. Ill. Aug. 21, 2024) (similar); *In re Teknek, LLC*, 343 B.R. 850, 868-69 (Bankr. N.D. Ill. 2006) (courts may grant "preliminary equitable relief . . . of the same character as the final equitable relief sought in the count or claim at issue"). *Accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32-33 (2008) ("Given that the ultimate legal claim is that the Navy must prepare an EIS, not that it must cease sonar training, there is no basis for enjoining such training"); *Betts v. Bd. of Educ. of City of Chicago*, 466 F.2d 629, 632-33 (7th Cir. 1972) ("the equal protection clause was not mentioned in any of the counts . . . on which the motion for a preliminary injunction was grounded and therefore will not be considered on appeal.").

obligations, and applicable Retail Service Tariffs," *id.* ¶ 3(D). ComEd terminated Hillwood's retail application based on failure to provide required deposits and land rights. *Supra* 3.

These issues implicate the ICC's exclusive jurisdiction, which extends to all "rates," defined to include "any rule, regulation, charge, practice or contract relating" to retail service. 220 ILCS 5/3-116; *see* 220 ILCS 5/9-252. A claim must go to the ICC if its "essence . . . is that a utility has charged too much for a service," or when it "goes directly to ComEd's service and infrastructure." *Sheffler v. ComEd*, 2011 IL 110166, ¶¶ 42, 50. Illinois courts have rejected suits on similar facts. *Friederich v. Illinois-American Water Co.*, 94 Ill. App. 3d 172, 175-76 (5th Dist. 1981), held that the ICC had exclusive jurisdiction over a request for a mandatory injunction compelling a utility to extend service that arose from a dispute about who pays because those issues "may be classified as a rate dispute," "vest[ed]" in the ICC. *Id.* In *Held v. Stanback*, 2025 IL App (1st) 250307, the circuit court rejected an "emergency motion . . . seeking an injunction ordering Nicor to reconnect" the plaintiff and found it had "no jurisdiction." *Id.* ¶ 10. The appellate court affirmed dismissal, explaining the ICC's "exclusive jurisdiction" encompasses "what utilit[ies] may and may not do." *Id.* ¶¶ 34, 38-39; *see Greenside Props., LLC v. Peoples Gas Light & Coke*, 2017 IL App (1st) 162821, ¶¶ 7, 18 (dismissing suit based on refusal to connect service). Hillwood cannot show a likelihood of success on any retail claim or that the "intermediate relief" it seeks is "of the same character as that which may be granted finally." *De Beers*, 325 U.S. at 220.

The ICC's enforcement scheme underscores why the Motion fails. "The legislature has granted the [ICC] an array of enforcement duties and powers," including "to ensure regulated utilities obey" the law. *State ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 26, 21 N.E.3d 437, 446. As Hillwood concedes, the ICC "may consider requests for interim administrative relief and establish expedited schedules." Mem. 5. It may also seek injunctive relief

in circuit court, via a specific procedure: (1) it must adopt "a resolution" that a utility is acting unlawfully; (2) absent an emergency, it must give 48 hours' notice of "the alleged violation" and the meeting at which the ICC will consider the resolution; and (3) if the ICC sues, the utility must answer, and "in the meantime said public utility may be restrained." 220 ILCS 5/4-202.

The relief Hillwood seeks would upend this scheme in just the way the Illinois Supreme Court has rejected. *Pusateri*, 2014 IL 116844, ¶ 27 (holding that the Illinois False Claims Act does not apply to certain ICC-related claims, in part because that would interfere with "the [ICC's] exclusive jurisdiction" and its "robust regulatory scheme"). Hillwood says relief on its desired timeline is not "guarantee[d]." Mem. 5. But if the ICC deemed Hillwood's claims persuasive, it has ample authority to act. *See, e.g.*, *ICC v. Ameren Illinois Co.* (Docket No. 20-0389) (Emergency Motion for Stay and Other Interim Relief filed on September 28, initial responses filed two days later, and Ameren ordered to show cause by October 15). Hillwood cannot invoke Illinois-law causes of action while rejecting the limits Illinois law imposes.[3] And its complaints are especially ill-founded because of its delay. Hillwood certainly cannot show that the ICC process would have been insufficient *had Hillwood timely invoked it* when (per Hillwood) the dispute first arose on May 4. It has not challenged the termination of its retail application at the ICC, let alone prevailed.

Hillwood says courts applying "primary jurisdiction" can grant interim relief. Mem. 4. But again, the ICC's jurisdiction is *exclusive*. Hillwood cites *Village of Deerfield*, which the Illinois Supreme Court *overruled* precisely because ICC jurisdiction over "ComEd's infrastructure and its provision of electrical services"—the very issue here—is "exclusive." *Sheffler*, 2011 IL 110166, ¶ 56. And while jurisdiction is "concurrent" in "primary jurisdiction" cases, that is not so when an

---

[3] *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (state-law claims "involve rights created by a state, rights which are subject to definition, limitation and, frequently, negation by the state," and if a "state court does not have jurisdiction to hear [a] claim, then [the plaintiff] has failed to state a claim upon which relief may be granted in a federal court").

agency has exclusive jurisdiction. *Vill. of Arlington Heights v. City of Rolling Meadows*, 2025 IL 130461, ¶¶ 19, 21. This Court cannot issue a permanent injunction setting aside ComEd's termination of Hillwood's retail application or dictating the terms on which ComEd provides retail service. So no preliminary injunction is available either. *De Beers,* 325 U.S. at 220.

Nor do Hillwood's federal cases show that courts may grant preliminary injunctive relief when a state makes agency jurisdiction exclusive. First, each case turned on a statute read to permit interim relief sometimes and not others.[4] Here, Illinois foreclosed injunctive relief. Second, those cases preceded the Supreme Court's reaffirmation that likelihood of success is essential.[5] Third, each movant promptly invoked agency processes. Fourth, each injunction preserved a longstanding status quo. None compelled new service or dictated how a regulated system must be designed.

In addition to the jurisdictional obstacles, Hillwood cannot show it is likely to succeed at the ICC. ComEd provides service "only if all applicable prerequisites for service and continuing obligations . . . are met and maintained," 3rd Revised Sheet No. 149, and an applicant "*shall* provide a deposit sufficient to secure the costs of procurement of long lead materials required . . . , *as determined by*" ComEd. 1st Revised Sheet No. 149.3 (emphasis added). It must also provide "such permits, easements, or other rights as [ComEd] reasonably deems necessary." *Id.* Especially with this discretion-conferring language, Hillwood cannot show the termination was unlawful.

**B. No TSA Claim Supports Hillwood's Demands.**

Hillwood asserts that the TSA "require[s]" ComEd "to provide retail service regardless of its cancellation of the Application." Mem. 3. But Hillwood never tries to show that it is likely to

[4] *Locomotive Engineers v. Mo.-Kan.-Tex. R.R. Co.*, 363 U.S. 528, 531-32 (1960); *Trans Int'l Airlines v. Int'l Bhd. of Teamsters*, 650 F.2d 952, 963-67 (9th Cir. 1980); *Murray Ohio Mfg. v. Louisville & Nashville R.R. Co.,* 496 F. Supp. 179, 182-85 & n.7 (M.D. Tenn. 1980).

[5] *Starbucks*, 602 U.S. at 350 (rejecting "watered-down approach" granting relief without likelihood of success); *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (a "difficult question as to jurisdiction is . . . no reason to grant a preliminary injunction," as it "says nothing about the 'likelihood of success on the merits'").

succeed on that claim, nor could it. Any duties the TSA might impose on ComEd are contingent on Hillwood satisfying its duties under ComEd's retail tariff. *Supra* 5-6. The TSA certainly does not guarantee an energization date. The Commercial Operation Date, which Hillwood invokes, is its "initial estimated service date." TSA Recitals. Then, in a provision outlining procedures by which Hillwood can change this "requested" date, the TSA says that afterwards, "Utility will, consistent with Good Utility Practice, its retail service obligations, and applicable Retail Service Tariffs, work to meet the requested Commercial Operation Date." TSA ¶ 3(D). More, the TSA anticipates delay: if facilities "are not or will not be completed" on schedule, the schedule "shall be modified," ¶ 4(B), and ComEd "shall not be held liable" for delay attributable to Hillwood, ¶ 4(D). The TSA's remedy for even unexcused delay is not an injunction but Hillwood's option, after a 730-day extension, to terminate without paying the Early Termination Fee. ¶ 4(C)–(D).

Indeed, the TSA—as a FERC-jurisdictional rate schedule—could never obligate ComEd to provide *retail* service on particular terms. The Federal Power Act ("FPA") "places beyond FERC's power, and leaves to the States alone, the regulation of 'any other sale'—most notably, any retail sale—of electricity." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 265 (2016); 16 U.S.C. § 824(b)(1). FERC recognized this in approving the TSA, explaining that the ICC "retains authority to establish terms of retail service between ComEd and Hillwood." *Commonwealth Edison Co.*, 194 FERC ¶ 61,183, at P 30 (2026); *see* 196 FERC ¶ 61,226, at P 2 (2026) (similar).[6]

**C. Hillwood Is Not Likely To Succeed On The Letter Of Credit Issue Either.**

The letter-of-credit claim cannot support the relief Hillwood seeks, so ComEd will be brief. Hillwood emphasizes one feature of Exhibit C (the year in its first row), and the Court has observed

[6] FERC's *Red Energy* decision does not help Hillwood. FERC rejected—"without prejudice"—an unopposed notice cancelling a different TSA. *Commonwealth Edison Co.*, 196 FERC ¶ 61,211, at PP 1, 6 (2026). That holding does not address ComEd's obligations after a retail application is terminated.

that this provision could have been drafted more clearly. 8/24 Tr. 6:12-20; 8/28 Tr. 5:1-10. But as this Court also recognized, Illinois does not read contracts one provision at a time. The "primary objective" is to "give effect to the intent of the parties," viewing provisions in "context." *In re Norview Builders, Inc.*, 2019 WL 2297466, at *2 (N.D. Ill. May 29, 2019) (quoting *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007)). Here, three features warrant attention.

*First*, if the TSA is to fulfill its purpose, the letter of credit must provide real security when it is needed. Hillwood acknowledges the TSA must "secure the transmission service the Project requires." SAC ¶ 56. Yet under Hillwood's reading, it need only provide $1 of security until 2029. That is after Hillwood initially anticipated that the Project would be operational, and such a reading would leave Illinois families unsecured when risk is greatest. FERC Commissioners agreed. Commissioner Rosner said that a "$1 letter of credit protects no one," and would yield an "outcome [that] is precisely what the Commission sought to prevent in its order accepting the contract." *Commonwealth Edison Co.*, 196 FERC ¶ 61,226 (2026) (Rosner, Comm'r, concurring at PP 3-5). Commissioner LaCerte called the idea that $1 "may provide appropriate security" an "embarrassing legal fiction." *Id.* (LaCerte, Comm'r, concurring at P 3).

*Second*, the Early Termination Fee underscores Hillwood's error. It concedes the letter of credit exists "to secure Customer's obligations under this TSA." TSA ¶ 9(A)(a); SAC ¶ 74. ComEd thus may draw on the letter for "all unpaid costs or amounts owed to it pursuant to this TSA." *Id.* ¶ 9(A)(f). One is the Early Termination Fee. TSA ¶ 14(A)(a); *see id.* ¶¶ 14(C), 14(F). When the letter came due on April 14, 2026, that fee was $87,202,237; it is now $174,404,473. *Id.* Ex. E. The parties would not have agreed to leave customers secured by $1 against a nine-figure exposure.

*Third*, Hillwood's reading does not give meaning to the "[u]pon issuance" language. Exhibit C specifies the face amount a letter must have "[u]pon issuance," and Section 9(A)(a) fixes

issuance at thirty days after the Effective Date (April 14, 2026). The first amount on the schedule is $586,876,792. Yes, that figure sits in a row labeled "Year 1 – 2029," but in context, the best reading is that "upon issuance" identifies the required amount and the dates identify when the amount declines. ComEd's reading gives meaning to all aspects of Exhibit C; Hillwood's does not.

## II. Hillwood Has Not Shown Irreparable Harm.

Hillwood fails to show irreparable harm. *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005). *First*, "self-inflicted wounds" do not suffice. *Second City Music, Inc. v. Chicago*, 333 F.3d 846, 850 (7th Cir. 2003). A plaintiff that "los[es] services only" because "it stop[ped] paying" cannot show irreparable harm, even if it disputes the charge. *CF Ent., Inc. v. Nielsen Co. (US), LLC*, 2020 WL 3892988, at *12-13 (N.D. Ill. July 10, 2020). When a movant has "the financial wherewithal" to keep going but declines, "any ensuing irreparable harm would be of [its] own making." *Dep't of Educ. v. California*, 604 U.S. 650, 652 (2025) (per curiam). Here, the Court observed that Hillwood has represented "we will pay, we would pay, we'd love to pay," and Hillwood could have paid "under protest" and "still raise[d] these issues"—any time since May. 8/28 Tr. 36:24-37:9; *e.g.*, Fleit Decl. ¶ 14.

*Second*, irreparable harm requires "a causal mechanism" linking the challenged conduct to a "future threat" the injunction would avert. *DM Trans, LLC v. Scott*, 38 F.4th 608, 621 (7th Cir. 2022). A court must ask "what granting [the movant] the injunction [it] seeks will practically accomplish" and denies relief where it "harbor[s] serious doubts that injunctive relief would eventually lead to [the movant] accomplishing her goal." *Santa Maria*, 2025 WL 96482, at *8. Here, an injunction saying ComEd must follow Hillwood's interpretation of the letter-of-credit provision would get Hillwood nothing. More broadly, Hillwood has failed to show it can build a multi-billion dollar data center. Mr. Fleit says Hillwood "has suitable, willing, and capable tenants" and is "ready, willing, and able" to satisfy "all conditions." Fleit Decl. ¶ 13. But Hillwood has not

identified any tenant or lease, or shown it has the billions the project requires. Declarations lacking "the 'who, what, where, when, why, and how'" do not prove irreparable harm. *Students & Parents for Privacy v. U.S. Dep't of Educ.*, 2016 WL 6134121, at *37 (N.D. Ill. Oct. 18, 2016). Meanwhile, Hillwood has not paid a dime since March 2026, does not own the land, and is fighting a lawsuit that seeks to void the Project's zoning approvals. Alvarez Decl. ¶¶ 9-15, 19-20.

Hillwood's own choices exacerbate the doubt. It said its unidentified tenant's "drop-dead date is . . . July of 2030." 8/28 Tr. 56:10-12. Hillwood has not shown it can now build the project on the timeline it says it needs (or that ComEd ever had an obligation to meet a hard deadline). Mr. Fleit declares that Hillwood "is able to procure its own GIS circuit breakers so that the Project may proceed." Fleit Decl. ¶ 15. But he does not say from whom, on what schedule, or pursuant to what specifications. Anyway, ComEd does not accept customer-supplied equipment, and Hillwood could not procure a custom breaker meeting ComEd's specifications faster than ComEd. Alvarez Decl. ¶ 24. Hence, the harm Hillwood claims "already occurred," due to Hillwood's choices, "and cannot be precluded by [an] injunction." *Santa Maria*, 2025 WL 96482, at *8. When Hillwood withdrew its motion six weeks ago, it told the Court it "no longer believe[d] [the motion] can provide an adequate remedy." Dkt. 94 at 1; *see* 9/1 Tr. 2:21-24. It ignores that admission.[7]

*Third*, Hillwood's delay underscores its failure. A movant "must affirmatively justify why the Court should overlook a delay," because delay is "circumstantial evidence" that harm "is not irreparable or as great as claimed." *Santa Maria*, 2025 WL 96482, at *7. In Hillwood's view, this dispute began on May 4. Mem. 6. If it believed this dispute were the one thing standing between it and a data center, it would not have let its July 24 state-court injunction motion sit; waited until

[7] Statements of fact in a party's motion are admissible against it. Fed. R. Evid. 801(d)(2)(A), (C); *Frymire v. Peat, Marwick, Mitchell & Co.*, 1991 WL 66381, at *1 (N.D. Ill. Apr. 22, 1991).

August 26 to seek a TRO; withdrawn that motion five days later; rejected ComEd's August 29 offer that would have allowed the Project to resume; or failed, even now, to file with the ICC. The Court observed in August that "the perception that Hillwood maybe is not taking this as seriously as it should . . . could certainly be valid." 8/28 Tr. 14:9-12. That is now even more true.

*Fourth*, Hillwood has not shown its alleged damages are an inadequate remedy. "[T]he normal remedy for breach of contract is . . . damages." *Miller v. LeSEA Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). Hillwood's noncompete cases, Mem. 14, involve operating businesses losing identified customers, not an unbuilt project with no disclosed tenant. Harm that "eludes calculation because it is speculative" is not irreparable, *Bellon*, 414 F.3d at 705-06, and reputational injury counts only "if proven," *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021).

## III. The Balance Of Equities And Public Interest Foreclose Relief.

The balance of hardships tilts even more strongly against Hillwood's requested relief than it did when Hillwood withdrew the same request in August. Leichtman Decl. ¶¶ 37-63.

***Imposing unrecoverable risks on customers.*** Requiring ComEd to treat Hillwood as part of Cluster 1 would impose hundreds of millions of dollars of unsecured risk on customers. Leichtman Decl. ¶¶ 38, 40, 43. Risk is itself a cost. *Cent. Nat'l Bank v. Treasury*, 912 F.2d 897, 902 (7th Cir. 1990). ComEd would have to plan the grid as if Hillwood will enter service, incurring engineering and construction costs. Leichtman Decl. ¶ 40. Yet ComEd has no security if Hillwood fails. *Id.* ¶¶ 40-42. That is the point of the TSA letter of credit and Retail Application deposits.

***Spreading unsecured risk across PJM.*** Compelling ComEd to ask PJM to add Hillwood to PJM's 2027 Load Forecast, if PJM would even do so, would spread yet further risk to customers across 14 jurisdictions. Leichtman Decl. ¶¶ 45, 53-55. Given the Project's size, including it in the forecast could lead PJM to plan different transmission lines. *Id.* ¶ 51. If 1,800 MW of load never

develops, PJM could be left building a less optimized network, and every customer would pay. *Id.* It could also force PJM to procure unneeded electrical supplies in its upcoming auction for capacity to be delivered in 2030/2031—potentially to the tune of hundreds of millions of dollars. *Id.* ¶ 53.

***Delays to existing projects.*** ComEd started its Cluster 2 retooling analysis in September 2026. Leichtman Decl. ¶¶ 57, 63; Dkt. 81 ¶¶ 23-24. ComEd has nearly finished and must complete that analysis before it begins the Cluster 3 study. Leichtman Decl. ¶¶ 19, 57. If the Court required ComEd to treat Hillwood like other projects originally in Cluster 1, ComEd would have to discard that work and start over. *Id.* ¶ 59. It could not even restart the Cluster 2 retooling analysis until PJM completed a further study of Hillwood's load, which would take roughly 60 days. *Id.* That would delay the studies for the 28 other projects in Clusters 2, 3, and 4 by many months, inflicting potentially enormous losses on those customers. *Id.* ¶¶ 56-59, 61. Cluster 3 alone includes 17 projects whose requested load is roughly half of ComEd's all-time system peak and that have been waiting to be studied since August 2025. *Id.* ¶ 58. Because of the Project's size, Hillwood would also occupy transmission capacity in the modeling that could be allocated to other projects, forcing them to wait for additional network reinforcements and risking years of further delay. *Id.* ¶ 60.

***Hillwood has aggravated the harms.*** Because the grid is interconnected, a project or upgrade cannot just be dropped from the plan if it turns out to be unnecessary; doing so requires restudying the entire system. *Id.* ¶ 43. So if Hillwood were reinserted and its Project failed, ComEd would face a choice between constructing network reinforcements anyway and incurring those costs, or restudying every later project and forcing applicants to absorb months or years of delay. *Id.* ¶¶ 43, 60. Hillwood has known since August that ComEd would be working on its retooling analysis in September and decided to withdraw its motion and let ComEd proceed with its work.

***This Court and the Seventh Circuit have rejected similar requests.*** In *Santa Maria*, this

Court denied an injunction to a student who waited nine months after her dismissal to move for preliminary relief seeking reinstatement, observing that "the remedy she seeks here would alter the status quo, rather than preserve it." 2025 WL 96482, at *8. The Court emphasized that the "uncertainty the Court would introduce if it granted . . . the preliminary injunction she seeks further counsels against awarding preliminary relief at all"—pointing to the complications that would ensue if, for example, the plaintiff were readmitted and failed for other reasons, or if she were readmitted but lost on the merits. *Id.* The Seventh Circuit has rejected attempts to characterize injunctions as "status quo" when they require affirmative acts, and has reversed injunctions "necessitat[ing] the construction of new facilities." *Jordan v. Wolke*, 593 F.2d 772, 773 (7th Cir. 1978). Here, Hillwood does not seek status quo relief: As of May or July it had only an unterminated project. It seeks a decree that the grid be planned and built to accommodate its load.

## IV. Any Injunctive Relief Must Be Accompanied By A Substantial Bond.

Rule 65(c) permits relief "only if the movant gives security," and courts "err on the high side." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456-57 (7th Cir. 2010); *see Yan v. Individuals,* 2025 WL 2098801, at *2 (N.D. Ill. July 25, 2025). That should be the full TSA amount, or at least the $261.6 million Early Termination Fee applying before the Commercial Operation Date, plus $100 million in retail deposits. Alvarez Decl. ¶ 23. Any bond must be posted before an injunction is effective. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 912 F.3d 1054, 1057 (7th Cir. 2019).[8]

## CONCLUSION

The Court should deny Hillwood's motion.

---

[8] Hillwood's injunction is also impermissibly vague. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). And its request for an order preventing ComEd from "communicating" about the cancellation—which is in the public record—would violate core First Amendment rights with no justification.

Dated: October 15, 2026

Respectfully submitted,

**COMMONWEALTH EDISON COMPANY**

By: /s/ Nicole A. Allen
One of Its Attorneys

Nicole A. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Phone: (312) 923-2868
NAllen@jenner.com

Zachary C. Schauf (*pro hac vice*)
Zachary B. Cohen (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, DC 20001
Phone: (202) 639-6000
ZSchauf@jenner.com
ZCohen@jenner.com

*Counsel for Defendant Commonwealth Edison Company*

**CERTIFICATE OF SERVICE**

I, Nicole A. Allen, an attorney, hereby certify that on October 15, 2026, I electronically filed the foregoing document using the Court's CM/ECF system. Service will be effected on all counsel of record by and through the Court's CM/ECF system.

/s/ Nicole A. Allen
Nicole A. Allen